## MELIUS, CURRIER and SHERWOOD v. LOCK. E. HOUSTON.

1. PRACTICE: HIGH COURT OF ERRORS AND APPEALS.—The High Court of
Errors and Appeals will not review the action of the court below in over-
ruling a motion for a new trial, which appears only in the bill of exceptions.
2. ATTACHMENT: TRIAL OF RIGHT OF PROPERTY MAY BE HAD BEFORE
JUDGMENT ON THE ATTACHMENT.—The right of property, levied on by a
writ of attachment, and claimed by a third person, may be tried before the
rendition of a judgment against the defendant in the attachment.
3. SAME: DEATH OF DEFENDANT AFTER SERVICE DOES NOT ABATE, NOR
MAKE IT NECESSARY TO REVIVE.—The death of the defendant does not
abate a suit by attachment, and by the provision of the statute, "if the
defendant die after service of the writ, the suit is to be carried on to judg-
ment, sale, transfer, and final determination, as if such death had not oc-
curred.   Rev. Code, 382, Art. 39.
4. EVIDENCE: WITNESS MUST TESTIFY AS TO FACTS WITHIN HIS OWN KNOWL-
EDGE.—A witness will not be permitted to testify to facts of which he
has no knowledge, and of which he is informed by the statements of others
not parties to the suit.

5. SAME: RECORDS: AUTHENTICATION OF, ACCORDING TO ACT OF CONGRESS, WHEN JUDGE AND CLERK SAME PERSON.—A record, where the office of clerk and judge is held by the same person, should be attested by the clerk in his proper capacity, and the certificate of the judge as to the due form of the attestation, before it is admissible in evidence under the Act of Congress.

6. SAME: ADMISSIONS OF PARTY TO A FRAUDULENT CONVEYANCE.—In a suit to set aside a conveyance as being fraudulent as to creditors, the admissions of the grantor that he is indebted to the parties for whose benefit the conveyance is made, are of questionable force.

ERROR to the Circuit Court of Monroe county, Hon. J. M. Acker, judge.

*Fulton Anderson,* and *Wm. S. Yerger,* for plaintiffs in error, contended:

1. That the deeds of Mobley were void on their face; and cited numerous authorities. The point raised was not considered by the court, and the argument is not inserted.

2. That the record from the Court of Ordinary in South Carolina, was improperly admitted as evidence. *Stewart* v. *Suanrey,* 23 Miss. R. 505.

3. That the death of Mobley did not vitiate the judgment rendered afterwards. The evidence shows that the suit of attachment was served before Mobley's death, and by the provisions of the Code the suit is prosecuted to a final determination, as if such death had not occurred. Rev. Code, 382, art. 39. *Grand Gulf Bk.* v. *Conger,* 9 S. & M. 505.

4. That judgments of courts of general jurisdiction cannot be collaterally attached unless void on their face. *Witt* v. *Russel,* 10 Humph. 208; *Reed* v. *Wright,* 2 Green (Iowa), 15; *Hall* v. *Hefly,* 6 Humph. 444; *Hubbard* v. *Fisher,* 25 Vermt. 539; *Borden* v. *State,* 6 Engl. (Ark.), 536.

5. That if Mobley was dead at the time of the rendition of the judgment, it does not affect the proceedings anterior to his death. The cause is still in court, but the judgment cannot be rendered efficacious until proper proceedings are had by writ of error *coram nobis,* which lies in the court where the

error in *fact* has been committed. *Rochester* v. *Anderson,* 2 Bibb. 569; *May* v. *State Bk. of N. C.,* 2 Robinson (Va.), 68; *Dews* v. *Harper,* 6 Ohio (Hammond), 578; 13 Iredell, 267; 6 B. Mon. 331; 5 Florida, 364; 18 U. S. Dig. 457; 12 S. & M. 362.

*Houston & Reynolds,* for defendant in error, contended that the deeds of Mobley to Houston were not void.

HANDY, C. J., delivered the opinion of the court.

This was a trial of the *right of property,* made on the claim of the defendant in error, under the statute, of a negro slave levied on under an attachment against one Mobley at the suit of the plaintiffs in error.

The case is brought up on special exceptions taken to the rulings of the court below, on the trial, and the action of the court on the motion for a new trial cannot be considered, because the record does not properly show any such motion, nor any judgment of the court thereon, the same appearing only in the bill of exceptions.

On the trial, the claimant offered evidence to prove that Mobley, the defendant in attachment, against whom a judgment had been rendered in the suit in attachment, was dead at the time of the rendition of that judgment. The plaintiff objected to the introduction of this evidence, but the objection was overruled and the evidence admitted, and the plaintiff excepted; and this is the first error assigned. Afterwards, the court instructed the jury that, "if they believe from the testimony that Mobley was dead at the time of the rendition of the judgment here sought to be enforced, they must find for the defendant." These two rulings will be considered together.

They proceed on the idea, that the rendition of a judgment against the defendant in attachment was essential, before the issue on the right of property could be tried. But this was an erroneous view. The issue made by the claim of the defendant in this case, was entirely collateral to the matter of the attachment against the original defendant. Its object and effect were

to determine whether the property levied on and claimed by the defendant in this case, was liable to be condemned as the property of the defendant in attachment, or was the property of the claimant. It is immaterial to that issue, whether the original defendant was dead or not. If he was dead, that did not abate the suit against him; but, by the provision of the statute, it was to " be carried on to judgment, sale, transfer and final determination, as if such death had not occurred." Rev. Code, 382, art. 39. If the issue should be found for the claimant, the property would be discharged from the attachment. But if the verdict should be against him, a judgment would go against him, as in an action of *detinue*, for the property, if to be had, and if not, for its value as assessed by the jury, with damages and costs, which judgment it would be the duty of the claimant to satisfy, by delivery of the property or payment of the money, which would remain in the custody of the law, to be applied to the satisfaction of the judgment when rendered for the plaintiffs in the attachment suit, or to be paid to the defendant in attachment, if the plaintiffs should fail to recover in the suit.

The claimant, in such case, is not compelled to wait until judgment be rendered against the original defendant; but as his claim of property presents a matter of individual right in him, independent of the question of indebtedness of the defendant, to the plaintiffs in attachment, he is entitled to have his right determined without delay. These rulings of the court were, therefore, erroneous.

The second error assigned is, that the court permitted the deed of trust, bearing date the 19th February, 1858, made by Mobley, to the defendant in error, to be read in evidence against the objection of the plaintiffs, which ruling was also excepted to.

In the argument in support of this assignment, counsel have urged objections to another deed, appearing in the record to have been offered in evidence, made by Mobley to the defendant in error, dated 12th February, 1858. But to the introduction of that deed, which was the deed by which the slave in con-

troversy was conveyed to the defendant in error, there appears to have been no objection made by the plaintiff; and the objection taken on the trial to the former deed, is not urged. The objections here urged do not appear to be applicable to the deed of 19th of February, but to that of the 12th of February; and as the matter appears in the record, they are founded in mistake of fact.

The next error assigned is that the court overruled the plaintiff's objection to reading in evidence the answer of the witness Gower to the fourth cross-interrogatory, in which he stated that "Mobley had not paid the heirs of James Pickett what he owed them."

It appears that the deposition of this witness had been taken and was offered in evidence, for the purpose of showing that Mobley was indebted to the heirs of Pickett in a considerable sum; and the object of this was to show that the deeds of trust made by him to the defendant in error, was to secure a valid debt to a large amount due the heirs of Pickett. The other answers of the witness, except that to the fourth interrogatory, showed that his knowledge, in relation to this indebtedness, was founded on the statements of Mobley to him, and on matters appearing by the records of the Court of Ordinary in South Carolina. On the objection of the plaintiffs, his answers were all excluded, except that to the fourth cross-interrogatory, and that was permitted to be read, and the plaintiffs excepted thereto.

That answer should also have been excluded. It had direct reference to his knowledge derived from Mobley's statements and the records, which was already excluded. He did not know that Mobley was indebted as alleged, except by those means of information; and it was, therefore, improper to permit him to testify that Mobley had not paid the heirs what he owed them; for he had no competent knowledge that he was indebted to them anything. Yet the admission of this answer permitted him to testify, in effect, that he was so indebted. After the other answers were rejected, this, which referred to and was founded on them, should also have been excluded.

The next error assigned is, the admission of the transcript of the records of the Court of Ordinary in Greenville District, South Carolina, to show the indebtedness of Mobley to the heirs of Pickett. These documents are, 1. An inventory made by Mobley and Woodward, executors, of notes, etc., due the estate of Pickett. 2. An inventory of other personalty of Pickett made by appraisers. 3. An account returned by Mobley and Woodward, showing moneys collected for the estate. 4. Another account returned by Mobley, showing the amount collected and due by him to the estate. All these documents are certified to be "true copies" of the accounts severally as returned and on record in the Court of Ordinary. The first three are certified and signed only by the Judge of the Court of Ordinary, and the last is certified by the judge, but the signature to the certificate shows that he signs it as Judge and Clerk of the Court of Ordinary.

These documents were clearly not authenticated according to the act of Congress, which requires both the attestation of the clerk and the certificate of the presiding judge of the court that the attestation is in due form. This is not obviated by the fact that, by the laws of South Carolina, the office of clerk and that of judge were held by the same person. It is still necessary that there should be the attestation by the clerk, in his proper capacity, and the certificate of the judge as to *the due form of the attestation*, 2 Phill. Evid. 4, Amer. edit. 426. This certificate is altogether wanting; and the documents are plainly not authenticated according to the act of Congress, so as to be admissible in evidence.

It will not do to say that the indebtedness, which these documents were introduced to prove, was sufficiently shown by the testimony of the defendant Houston. That testimony was simply the statement of Mobley that he was indebted to Pickett's heirs. Such a statement might not have been sufficient, in the mind of the jury, to show the indebtedness, and it is of questionable force in cases where the conveyance is alleged to be fraudulent as to condition. It cannot, therefore, be said, that this record evidence was useless and had no influence in the cause.

The judgment is reversed, and the cause remanded, and a new trial awarded.