WELLER MANUFACTURING COMPANY, Respondent, v. ALFRED F. EATON et al., Executor of ALFRED N. EATON, Deceased, Appellant.

St. Louis Court of Appeals, November 28, 1899.

1. **Judgment: PARTY DEAD AT RENDITION: FOREIGN JUDGMENT, VOID.** A foreign judgment rendered on proper service, but after death of party, if sued on in this state, is void. Its nullity appears when it is shown that the party was dead when judgment was rendered, which fact deprived the court of jurisdiction.

2. ——: **AGAINST A DEAD PERSON: A NULLITY, WHEN.** A Judgment rendered in a suit begun and prosecuted against a dead man, although in due form and good on its face, is absolutely void.

3. ——: ——: ——: **EVIDENCE DEHORS RECORD, ADMISSIBLE.** A judgment rendered in a suit commenced after the party's death is void for want of jurisdiction to render it, and may be attacked collaterally, by showing the death of the party that it is against.

4. ——: ——: **WITHOUT DUE PROCESS.** It would be in violation of the constitutional provision that "no person shall be deprived of life, liberty or property without due process of law," if judgment could be enforced, obtained in foreign jurisdictions against dead persons.

Appeal from the St. Louis City Circuit Court.

REVERSED.

*A. L. Abbott* for respondent.

(1) A foreign judgment valid on its face, when made the ground of an action in this state, is conclusive, where it

VOL. 81 app—42

appears that the court rendering the judgment had jurisdiction of the person and the subject-matter of the suit.    Hays v. Merkle, 70 Mo. App. 509; Williams v. Williams, 53 Mo. App. 619.    (2)    Where jurisdiction is obtained over the person of defendant during his lifetime, by a court of competent jurisdiction, a judgment rendered against him by that court after his death is not void, and such judgment can not be attacked collaterally.    Freeman on Judgments, secs. 140, 153; Black on Judgments, sec. 200; Van Fleet, Collateral Attack on Judicial Proceedings, secs. 606, 607; Coleman v. McAnulty, 16 Mo. 173; New Orleans v. Gaines, Adm'r, 138 U. S. 595; Claflin v. Dunn, 129 Ill. 241; Phelan v. Tyler, 64 California, 80; Knott v. Taylor, 99 N. C. 511; Mosely v. Southern Mfg. Co., 46 Pac. Rep. 508; Elliott v. Bastion, 40 Pac. Rep. 713.    (3)    When a court has acquired jurisdiction of the subject-matter, and the person during his lifetime, and a hearing is had and judgment rendered, and the judgment roll does not disclose the death of either parties to the controversy, then the judgment is not void because one of the parties may have died prior to its rendition.    Elliott v. Bastion, 40 Pac. Rep. 713.

*J. W. Evans* for appellants.

From our investigation, we find that the question of the validity of such a judgment has been twice before the supreme court of this state, the first time in the case of Coleman v. McAnulty, 16 Mo. 173.    That, however, is not a case similar to the one at bar, for the reason that it is a judgment rendered in this state, and for the further very material reason that it was the plaintiff in a garnishee proceeding who had died prior to the judgment against the garnishee, and when the question was raised, important interests of innocent third parties, required protection by the court, whereas in this case, the death is that of defendant, the judgment is a foreign judgment, and

innocent third parties' interests are not involved in the controversy. The question, however, of the validity of a judgment under somewhat similar circumstances has been considered by the supreme court in a later case, that of Sargent v. Rowsey, 89 Mo. 617, where the court lays down the principle of law in the following language: "Where a defendant, in an action to foreclose a mortgage on land, dies during the pendency of the action, and a decree of foreclosure is obtained, and a sale had under it ·without suggesting the death of defendant or reviving suit against his heirs, the sale is a nullity, nor could a revivor occur until suggestion of death was made." But this court, in the case of Rentschler v. Jamison, administrator, 6 Mo. App. 135—a case essentially and in all important particulars like the one at bar held that a judgment similar to the one sought to be established in this case was a nullity and without ony legal force. Pendleton v. Russell, 144 U. S. 640; Life Ass'n v. Fassett, 102 Ill. 315; Kelley v. Hoper, 3 Yerg. 395.

BLAND, P. J.—On September 26, 1896, the superior court of Cook county, Illinois rendered a judgment against A. N. Eaton, for $427.50. Eaton, at the date of the beginning of the suit which culminated in this judgment, was a resident of St. Louis, and continued so to be until June 11, 1896, when he died at his residence in said city. Notice of the suit was given him by mail directed to his address in St. Louis. A firm of Chicago lawyers appeared in the superior court and filed an answer to the suit in Eaton's behalf. At the date of the rendition of the judgment no suggestion of the death of Eaton, was made by either party, and it is to be presumed that the court proceeded to render its judgment in ignorance of his death. A duly certified transcript of the judgment was presented to the probate court of the city of St. Louis for allowance against Eaton's estate, where it was rejected, and the cause was appealed to the circuit court, where the judgment

was allowed as a claim against Eaton's estate, and the executor appealed to this court.

The court having jurisdiction over the subject-matter, and having acquired jurisdiction over Eaton by the filing of his answer to the merits in his lifetime, is the judgment a nullity, because Eaton died pending the suit and before judgment was rendered—is the question presented for adjudication.

Respondent's contention is that the judgment is not invalid, but erroneous only and not open to collateral attack, but being erroneous is subject to be set aside on a proper showing to the court that rendered the judgment. In support of his contention he cites Freeman on Judgments, secs. 140 and 153; Black on Judgments, sec. 200; New Orleans v. Gaines' Adm'r, 138 U. S. 595; Claflin v. Dunn, 129 Ill. 241; Phelan v. Tyler, 64 Cal. 80; Knott v. Taylor, 99 N. C. 511; Mosely v. Southern Mfg. Co., 46 Pac. Rep. 508; Elliott v. Bastion, 40 Pac. Rep. 713; section 140, Freeman on Judgments, reads as follows: "If jurisdiction be obtained over the defendant in his lifetime, a judgment rendered against him subsequently to his death is not void." At section 153, he says: "While the court (in such circumstances), ought not to proceed to judgment without making the representatives or successors in interest of the deceased parties to the action, yet if it does so proceed its action is irregular merely, and its judgment is not void," citing in foot note as supporting the text, Knott v. Taylor, 99 N. C. 511; and cases from sixteen other states. Black on Judgments, at section 200, says: "The great preponderance of authority is to the effect that, where the court has acquired jurisdiction of the subject-matter and the person, during the lifetime of a party, a judgment rendered against him after his death is, although erroneous and liable to be set aside, *not void* nor open to collateral attack," citing a long list of adjudicated cases in foot note as supporting the text. The celebrated case of New Orleans v. Gaines' Adm'r, 138 U. S. loc. cit. 612, cites section 140 of Freeman on Judgments ap-

Weller Mfg. Co. v. Eaton.

provingly, but says the city of New Orleans was estopped by its conduct in the litigation to raise the question in that court. The same section 140 of Freeman is cited and approved in Claflin v. Dunn, 129 Ill. 241. The supreme court of California in the case of Flint v. Cadenasso, 64 Cal. 83, held such a judgment erroneous, but not void. The supreme court of Utah in Elliott v. Bastion, 40 Pac. Rep. 173, made a like ruling, as did also the supreme court of Oklahoma in Mosely v. Southern Mfg. Co., 46 Pac. Rep. 508. The same doctrine is announced by our supreme court in Coleman v. McAnulty, 16 Mo. 173. But in Sargeant v. Rowsey, 89 Mo. loc. cit. 622, it was held that, a sale of land under a foreclosure decree obtained against one John M. Sargeant after his death, was a nullity, because his death was not suggested, nor the suit revived against either of his heirs. In Rentschler v. Jamison, 6 Mo. App. 137, it is said, *arguendo* that "the death of defendant *Garnhart* (who appeared and defended the suit, but died before final judgment) deprived the court of jurisdiction of his person." In the case of Pendleton v. Russell, 144 U. S. 640, the court speaking through Justice Field, ruled that a judgment rendered against a dissolved corporation was invalid; that the corporation had no capacity to be sued, and that the judgment was not binding on the receiver of the defunct corporation; the corporation had been duly sued and duly served with process during its lifetime. In Kelly v. Hooper, 3 Yerger. 395, the supreme court of Tennessee ruled that a judgment obtained against a dead man was a nullity, although suit had been brought against him and service of notice of the suit was duly made during his lifetime. The law is that a judgment in a suit begun and prosecuted against a dead man, although in due form and good on its face, is a nullity. Crosby v. Hutton, 98 Mo. 197; Graves v. Ewart, 99 Mo. 13; Williams v. Hudson, 93 Mo. 524; Bollinger v. Chouteau, 20 Mo. 89; 1 Freeman on Judgments, sec. 199. In Hinkle v. Kerr, 143 Mo. loc. cit. 48, our supreme court in an opinion by Brace,

Judge, while not ruling that a judgment in a suit against a dead man, over whom the court acquired jurisdiction in his lifetime is not void, yet distinguished such a judgment from one rendered against a man who was dead at the commencement of the suit, by saying that "the only thing that saves the one class from the common fate that would be common to both, is a rule of evidence." That is, that it is a rule of evidence that where jurisdiction was once acquired over the judgment defendant, you can not show that jurisdiction was lost and the suit abated by reason of his death before judgment; while in the other case you may show by evidence *dehors* the record that the defendant was dead when the suit was begun. On what principle of law this distinction rests or by what process of reasoning it can be defended we are not advised by the Hinkle case, nor by any of the decided cases or text writers, which hold that a judgment rendered against a dead man, over whom the court had obtained jurisdiction in his lifetime, is voidable only. If for the purpose of showing want of jurisdiction in a court of general jurisdiction to render a particular judgment, regular on its face and which recites the facts by which the court acquired jurisdiction over the person of defendant, it may be shown by oral testimony, or by other testimony *dehors* the record, that the defendant was dead when the suit was begun, and hence the court had no jurisdiction to render the judgment—why in the other case may it not likewise be shown by the same character of proof, that the defendant was dead when the judgment was rendered against him, for the purpose of showing that the court had no jurisdiction to render the judgment? Jurisdiction in the court over the subject-matter and the person of the defendant at the time the judgment was rendered, is the crucial test of its validity. If at the time the judgment is rendered, there is no defendant to be sued, there can not be jurisdiction in the court to render any judgment. The judgment sued on is no judgment, it is

against the name of A. F. Eaton, but not against his person, for at the date of its rendition there was not such person in being, and the name did not point out or designate a particular person to distinguish him from men in general; it is a blank judgment, because against a non-existing defendant. The so-called judgment is indefensible for another reason; it is void because opposed to that clause of our bill of rights, which provides, that "no person shall be deprived of life, liberty or property, without due process of law." If respect be paid to this right it afforded Eaton in his lifetime the opportunity ,o be present and to be heard in his defense before a judgment could be lawfully rendered against him, and after his death the same opportunity and right to his legal representatives, before his estate can be lawfully charged. It is remarked in the Hinkle case that the authorities, as to the validity of this class of judgments, are irreconcilable, and 'indicated that the question is still an open one in this state. However this may be as to domestic judgments, it is not so with a foreign one; the latter class are not clothed with the same sanctity as the former, but when made the foundation of a suit, are open to collateral attack, and the record of the judgment may be impeached in another state by extrinsic evidence for the purpose of showing that the court had no jurisdiction to render the judgment (Robertson v. Staed, 135 Mo. loc. cit. 144; Eagan v. Stover, 59 Mo. 87; Marx v. Fore, 59 Mo. 69), and this can be done even though the record of the judgment affirmatively states the facts conferring jurisdiction. Bradley v. Welch, 100 Mo. 258; Napton v. Laton, 71 Mo. 350; Wise v. Loring, 54 Mo. App. 258; Hays v. Merkle, 67 Mo. App. 55; Starbuck v. Murray, 5 Wend. 148; In re James, 99 Cal. 374; Thompson v. Whitman, 18 Wal. 457; Grover & Baker Machine Company v. Radcliff, 137 U. S. 287. The judgment sued on is void—its nullity was shown when it was made to appear that the Illinois court had no jurisdiction to render it, on account

of the decease of Eaton prior to its rendition. It follows that the judgment of the lower court must be reversed. It is so ordered.

Judge *Bond* concurs; Judge *Biggs* dissents.