AMOS P. TAPLEY vs. LUCRETIA W. MARTIN.

Essex. November 9. — 11, 1874. AMES, J., absent. ENDICOTT, J., did not sit.

If, after a verdict for the plaintiff, the defendant dies, the court has power to pass upon the exceptions alleged by him, and if justice requires, to enter judgment *nunc pro tunc* as of the term when the verdict was rendered, although no administrator has been appointed in this state.

If, at the time a suit is brought, both parties to it are citizens of this state, one party by becoming a citizen of another state is not entitled to have the suit removed to the United States Circuit Court, under the U. S. St. of 1867, c. 196.

Under the U. S. St. of 1864, c. 106, § 6, a copy of the certificate of organization of an United States National Bank, which is certified by the comptroller of the currency and authenticated by his seal of office, is competent evidence in a state court.

A surety on the bond of the cashier of a bank is not discharged by the fact that the cashier had, before the bond was given, committed frauds upon the bank, if such frauds were unknown to the officers of the bank, although they were guilty of gross negligence in not discovering them.

In an action by a surety on the bond of an officer of a bank to recover an amount paid on the bond without suit, against one who had agreed to save him harmless from all loss which he might suffer as surety, the court instructed the jury that if the plaintiff made the payment without the assent of the defendant, he must show that he was legally liable, but if he procured the assent in good faith he could recover. *Held*, that the defendant had no ground of exception.

CONTRACT on an agreement made by the defendant to indemnify the plaintiff for any loss or damage sustained by him as surety on the bond of James D. Martin, as cashier of the Hide and Leather National Bank, Boston. At the trial, before *Wells*, J., the jury returned a verdict for the plaintiff, and the defendant alleged exceptions. The nature of the case appears in the opinion.

*A. A. Ranney*, as *amicus curiæ*, in support of the exceptions.

*G. O. Shattuck & O. W. Holmes, Jr.*, for the plaintiff.

MORTON, J. After the exceptions were allowed in this case the defendant died. At the time of her death she was a resident of Baltimore in the State of Maryland. It does not appear that she left any estate in this Commonwealth, and no administration has been taken out here. But the court has power, notwithstanding the death of the defendant, to render judgment on the verdict, as of a preceding day or term, if justice requires it. Gen. Sts. c. 115, § 14; c. 133, § 7. The decision in the case of *Kelley* v. *Riley*, 106 Mass. 339, and the reasons upon which that de-

cision is based, apply to and govern the case at bar, and we therefore proceed to consider the exceptions alleged by the defendant at the trial.

1. The first exception is to the ruling of the court that the defendant was not entitled to remove the suit to the Circuit Court of the United States. At the time the suit was brought both parties were citizens of this state. The defendant afterwards removed to Maryland. The statute provides that where a suit " may hereafter be brought in any state court, in which there is controversy between a citizen of the state in which the suit is brought and a citizen of another state," such citizen of another state may, at any time before the final hearing or trial of the suit, remove the suit to the Circuit Court of the United States, in the manner pointed out in the statute. U. S. St. of 1867, *c.* 196. We are of opinion that this statute applies only to cases where, at the time the suit is brought, one of the parties is a citizen of another state than that in which it is brought. Any other construction would enable either party to all suits in the state courts to defeat the jurisdiction of the court, at his own option, by removing into another state. This was not the purpose or intention of the statute, and the fair construction of its language does not lead to such a result. We are therefore of opinion that the ruling excepted to was correct.

2. The copy of the certificate of organization of the Hide and Leather National Bank, certified by the comptroller of the currency, was properly admitted in evidence. The act of Congress provides that copies of such certificates duly certified by the comptroller, and authenticated by his seal of office, shall be evidence " in all courts and places within the United States." U. S. St. 1864, *c.* 106, § 6. And, independently of this provision, such certificates, when filed, are a part of the public records, and may be proved by duly authenticated copies. *Stetson* v. *Gulliver*, 2 Cush. 494. *Oakes* v. *Hill*, 14 Pick. 442.

3. The court ruled " that there was no evidence in the case, as tendered, which showed such knowledge by the officers of the bank, of frauds or defalcations by Martin before the date of his bond as cashier, that the failure to communicate the information to the sureties would discharge them from the obligation of their bonds ; " and the defendant excepted.

To understand this question it is necessary to state the facts bearing upon it. James D. Martin, a son of the defendant, was appointed cashier of the Hide and Leather National Bank, in January, 1867. The plaintiff, at the request of the defendant, became one of his sureties, and the defendant gave the bond in suit to indemnify him against any loss by reason of his so becoming surety. Martin had been a book-keeper in the bank before he was appointed cashier, and the defendant introduced evidence tending to show that while he was book-keeper he was guilty of frauds and defalcations similar to those of which he was guilty after he became cashier, and for which the plaintiff, as his surety, was liable. She also introduced evidence tending to show that while Martin was book-keeper, the attention of the directors was called to the fact that there were errors and inaccuracies in his books. But there was no evidence that the officers of the bank had knowledge that Martin, while book-keeper, was guilty of frauds or defalcations.

The defendant contended at the trial that the officers were guilty of gross negligence in not examining the books, and that the sureties were thereby discharged. But the court ruled, that unless the defendant proved actual knowledge by the officers of previous fraud, the sureties would not be discharged; that negligence in failing to examine, however gross, would not discharge the sureties, and, as before stated, that there was no evidence of such knowledge by the officers of the bank.

We are of opinion that these rulings were sufficiently favorable to the defendant.

Upon examining the evidence reported in the bill of exceptions, it is clear that there is no evidence which would justify the jury in finding that the officers of the bank had actual knowledge of Martin's frauds while he was book-keeper. We are not therefore called upon to decide whether, if they had such knowledge and failed to communicate it to the sureties on Martin's bond as cashier, the bond would be thereby avoided as to the sureties. The only question is, whether their negligence in failing to examine the books discharges the obligations of the sureties. We can see no principle upon which it can be held to have this effect. The object of the bond is to guarantee to the bank the faithful performance by the cashier of his duties. His duties and obliga

tions are not affected by the negligence of the other officers or agents of the bank, and such negligence does not discharge his sureties. In *Amherst Bank* v. *Root*, 2 Met. 522, which was similar to the case at bar, Chief Justice Shaw says: " The idea that the cashier is excused by the act or negligence of the directors arises from considering the board of directors as the corporation, and then applying a very equitable principle, that one ought not to recover of a surety damages caused by himself. We think the principle does not apply." In the case at bar the plaintiff was not induced to sign the bond by any fraud of the directors, and the court correctly ruled that he would not be released from his obligations as surety by their alleged negligence in failing to examine the books and affairs of the bank. *Minor* v. *Mechanics' Bank of Alexandria*, 1 Pet. 46. *United States* v. *Kirkpatrick*, 9 Wheat. 720. *Franklin Bank* v. *Stevens*, 39 Me. 532. *Farmington* v. *Stanley*, 60 Me. 472.

4. It appeared that the plaintiff paid the amount of his bond to the bank without a suit; and the court instructed the jury that if he made this payment without the assent of the defendant, he must show that he was legally liable; but if he procured her assent, and made the payment in good faith upon that assent, she could not put the plaintiff to proof that he was legally liable; to which the defendant excepted. This ruling was correct, accompanied, as it was, with the further instruction, that good faith, in the sense intended in the ruling, required that the plaintiff should inform the defendant of all facts known to himself bearing upon his liability. The plaintiff had only a nominal interest in the question of his liability on the bond. The defendant was the real party interested in this question. It was her right and duty to judge whether any defence should be made to the claim of the bank. After she had requested him to pay, or assented to his paying, he could not properly defend against the claim. If he did so, it would be at his own risk and expense, and he could not recover of the defendant any of the expenses of such unauthorized defence; he had the right to act upon her assent, and pay the claim without a suit; such payment was made at her request, and she is liable for the amount paid, and cannot defend upon the ground that there was a defence to the claim of the bank which she neglected to make before the payment.

We have considered all the questions raised by this bill of exceptions, although some of them have become immaterial by the special finding of the jury in the case. In answer to a special question submitted to them, they have found that the plaintiff made the payment to the bank with the assent of the defendant and in good faith. It was within the discretion of the court to submit this question to them, and their finding upon it is conclusive, and renders immaterial all questions as to the liability of the plaintiff on his bond. *Exceptions overruled.*